

THIS GENERAL INDEMNITY AGREEMENT is made by the person or persons identified on the signature pages hereof as "Principal" (hereinafter, together with the persons described in the last sentence of Section 20, the "Principal") and the persons identified on the signature pages hereof as "Additional Signatories" (collectively, and together with the Principal, the "Indemnitors") in favor of FIREMAN'S FUND INSURANCE COMPANY, THE AMERICAN INSURANCE COMPANY, NATIONAL SURETY CORPORATION, ASSOCIATED INDEMNITY CORPORATION, AMERICAN AUTOMOBILE INSURANCE COMPANY, WARNER INSURANCE COMPANY, or any other present or future subsidiary or affiliate of FIREMAN'S FUND INSURANCE COMPANY which may issue Bonds (as defined below), as the case may be (any one or all of which, together with the companies described in Section 13, are hereinafter referred to as the "Surety").

WHEREAS, Principal, solely or as co-adventurer with others, has requested and does hereby request the Surety to execute or procure the execution of such bonds, undertakings and recognizances (all of which, together with the bonds described in the last sentence of Section 20, are hereinafter referred to as the "Bonds") as have been or may hereafter be applied for directly or through an agent, attorney or other representative by the Principal or by one or more of the Indemnitors;

WHEREAS, the Indemnitors understand that the Surety expressly requires the delivery of this Agreement as part of the consideration for the Surety's execution of the Bonds or the Surety's refraining from cancelling the Bonds;

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the execution and continuation of the Bonds.

NOW THEREFORE, in consideration of the premises and of the execution and continuation of the Bonds, the Principal and the other Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, do hereby jointly and severally covenant and agree with the Surety, its successors and assigns, as follows:

1. **Payment of Premiums.** The Indemnitors will pay, when due, all premiums for each Bond in accordance with the Surety's rate filings or manual of rates or as otherwise may be agreed between the Surety and the Principal, as long as any liability of the Surety thereunder shall continue, and until the Surety is furnished with evidence satisfactory to the Surety that it has been discharged or released from such Bond and from all liability by reason thereof.

2. **Indemnification.** The Indemnitors shall indemnify the Surety against any and all liability, loss, costs, damages, attorneys fees and other expenses which the Surety may sustain or incur by reason of or in connection with the execution, renewal, continuation or replacement of the Bonds, including but not limited to (i) sums paid or liabilities incurred in connection with the Bonds or claims, suits or judgments under the Bonds, (ii) expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure the Surety's release from liability and (iii) expenses paid or incurred in recovering or attempting to recover losses or expenses paid or incurred. The Indemnitors shall indemnify the Surety against any and all liability, loss, damages, attorneys fees and other expenses which the Surety may sustain or incur from relying upon representations made by the Indemnitors regarding defenses to claims made against any Bond that may be available to the Principal or the Surety.

The Surety shall have the exclusive right to determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors or any one of them on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith, shall be final and binding upon the Indemnitors. The Surety shall also have the right to prepay the obligee on any Bond any amounts which the Surety, in good faith but in its sole and absolute discretion, (i) determines may become ultimately due on any Bond or (ii) deems may be necessary or advisable to protect any of the Surety's rights hereunder, even though a claim, suit or judgment has not yet been made or brought against the Surety on such Bond. An itemized statement of payments made by the Surety for any of the purposes specified in this Agreement, sworn to by an officer of the Surety, or a voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Indemnitors under this Section 2.

Without limiting the Surety's exclusive right with respect thereto, if the Indemnitors desire that a claim or demand against the Surety be resisted and litigated, the Indemnitors shall satisfy any conditions specified by the Surety, including, without limitation, any conditions for the Indemnitors to (i) give notice to the Surety to this effect, (ii) simultaneously deposit with the Surety, at the Surety's option, cash or collateral satisfactory to the Surety in an amount sufficient to cover the claim or demand and interest thereon to the probable date of disposition and (iii) at the Surety's option, either deposit simultaneously with the Surety cash or collateral satisfactory to the Surety in an amount sufficient to cover the expenses and fees of defense, or take over the resistance and litigation of the claim.

The Indemnitors shall, at any time upon the request of the Surety, procure the discharge of the Surety from any Bond and from all liability by reason thereof.

3. **Reserve Deposit; Obligations.** If the Surety shall establish a reserve to cover any actual or potential liability, claim, suit or judgment under any Bond, the Indemnitors, immediately upon demand and whether or not the Surety shall have made any payment therefor, shall deliver to the Surety a sum of money equal to such reserve and any increase thereof to be used, at the option of the Surety, to prepay such liability, claim, suit or judgment or as cash collateral to secure the Obligations (as defined below). The Surety shall have the right to use such deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement.

The Indemnitors expressly agree that any sums remaining, if any, in the Surety's possession after payment or prepayment of any liability or claim reserved for, at the discretion of the Surety, may be applied to the payment or prepayment and satisfaction of any other Obligations. Such deposit may be commingled with any other funds of the Surety and otherwise handled in any manner deemed appropriate by the Surety. The Surety shall have no obligation to invest, or to provide a return on, the deposit.

The "Obligations" shall mean any actual or potential liability, claim, suit or judgment under any Bond, and any loss, costs, damages, and attorney's fees covered by the indemnification provisions of this Agreement, and any other obligations of the Indemnitors to the Surety or any affiliate of the Surety, now or hereafter existing, whether under this Agreement or the Declarations attached hereto and incorporated herein (including, without limitation, the payment of all interest, fees and expenses) or any other agreement with the Surety or any affiliate of the Surety or otherwise.

**EXHIBIT**

**"A"**

**4. Changes in Contract.** If any Bond is given with respect to the Principal's obligations under a contract, the Surety in its sole discretion is hereby authorized, but not required, (a) to consent to any change in such contract or in the plans and specifications relating thereto, or issue any substitute for or renewal of any Bond; (b) to make or guarantee advances or loans to or for the account of the Principal to be used in the performance of obligations of the Principal under any contract covered by a Bond, without being required to see to the application of the proceeds of such advances and regardless of the actual use of such proceeds, the amount of all such advances or loans being conclusively presumed to be a loss hereunder for which the Indemnitors are liable; (c) in the event of any Contract Default (as hereinafter defined in Section 7), to exercise any of the rights and remedies available to it under this Agreement or otherwise to complete the contract, cause the same to be completed or consent to the completion thereof and to take any other action which the Surety may deem appropriate. The Indemnitors hereby release and discharge the Surety from all liability for its actions and omissions in taking possession of any work under a contract, except for liability resulting from the Surety's deliberate malfeasance.

**5. Security Interest.** The Principal and the other Indemnitors hereby assign, transfer, pledge and grant to the Surety, subject to the trust created under Section 11 of this Agreement, a security interest in their right, title and interest in and to (a) all contracts in which any or all of the Indemnitors have an interest (whether or not bonded by the Surety), including, without limitation, (1) all monies due or to become due to the Principal under or as a result of such contracts, including, but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work and proceeds of damage claims, and (2) all actions, causes of action, claims and demands whatsoever which the Principal may have in any way arising out of or relating to the Bonds or any contract, (b) with respect to contracts bonded by the Surety, all machinery, plant, equipment, tools, materials and supplies (the "Equipment") now or hereafter owned by the Indemnitors, whether or not located at the work site, for use in the performance of such contracts and including all materials ordered or purchased for such contracts, whether in process of construction, in transit to the site or in storage elsewhere, and all subcontracts let or to be let in connection with such contracts and such subcontractors' surety bonds, (c) any deposit made pursuant to any provision of this Agreement and any other money, general intangibles, instruments or other property which has been or shall hereafter be pledged to the Surety, and all accounts and other obligations owed to the Indemnitors by the Surety or any affiliate of the Surety from time to time, and (d) all proceeds of the foregoing. The rights and property described in the foregoing clauses (a) through (d), together with the Additional Collateral (as hereinafter defined), are hereinafter referred to as the "Collateral." The foregoing security interest secures the payment and performance of all Obligations. For purposes of the security interest granted herein, Fireman's Fund Insurance Company shall be designated the "Secured Party" (as such term is used in the Uniform Commercial Code (the "Code")) on behalf of itself and as agent for any of its present or future subsidiaries or affiliates who may be Sureties under this Agreement.

Anything herein to the contrary notwithstanding, (a) the Indemnitors shall remain liable under all contracts included in the Collateral to the extent set forth therein to perform all of their duties and obligations thereunder to the same extent as if this Agreement had not been executed, (b) the exercise by the Surety of any of the rights hereunder shall not release the Indemnitors from any of their duties or obligations under such contracts, and (c) the Surety shall have no obligation or liability under such contracts by reason of this Agreement, nor shall the Surety be obligated to perform any of the obligations or duties of the Indemnitors thereunder.

The Indemnitors represent and warrant that, except as otherwise disclosed to the Surety in writing: (a) the chief place of business and chief executive office of each Indemnitor and the office where each Indemnitor keeps its records concerning the Collateral, and all originals of all chattel paper which evidence Collateral, are located at the address set forth below the signature of such Indemnitor; (b) all originals of all chattel paper which evidence Collateral have been delivered to the Surety; (c) none of the Collateral is evidenced by a promissory note or other instrument; (d) the Indemnitors have exclusive possession and control of the Equipment; (e) there is no currently effective financing statement on file with respect to any assets of the Indemnitors, and the Indemnitors own the Collateral free and clear of any lien, security interest, charge or encumbrance, except for the security interest created by this Agreement and except for purchase money security interests in any Equipment; and (f) the tax identification number and name of each Indemnitor set forth in the signature pages hereof are complete and correct, and the Indemnitors have used no names other than the names so set forth.

The Indemnitors shall notify the Surety at least 60 days in advance of any change in any Indemnitor's name, tax identification number, chief place of business, chief executive office or the office where it keeps its records concerning the Collateral and all originals of all documents, instruments and chattel paper which evidence Collateral. The Indemnitors shall hold and preserve such records, documents, instruments and chattel paper and will permit representatives of the Surety at any time during normal business hours to inspect and make abstracts from such records, documents, instruments and chattel paper.

Without the Surety's prior written consent, which shall not be unreasonably withheld, the Indemnitors shall not, nor permit any of their subsidiaries to: (i) sell, assign (by operation of law or otherwise) or otherwise dispose of any of the assets (whether or not constituting Collateral) of their respective businesses, including but not limited to shares representing stock in their respective businesses and subsidiaries, either in whole or in part, or any interest therein except in the ordinary course of business and except for security interests not prohibited by clause (ii) of this sentence, (ii) create or suffer to exist any lien, security interest or other charge or encumbrance upon or with respect to any of the Collateral to secure debt of any person or entity, except for the security interest created by this Agreement and except for purchase money security interests in any Equipment, or (iii) merge or consolidate with any other company, including any other company directly or indirectly controlled by, controlling or under common control with the Indemnitors.

**6. Assignment.** In addition to the security interest granted hereunder, the Indemnitors hereby assign, transfer and convey to the Surety, subject to the trust created under Section 11 of this Agreement, all of the rights and property which constitute the Collateral. The foregoing assignment is for the purpose of enabling the Surety to take immediate possession of and to use any Collateral to complete the performance of the obligations of the Principal under the contract covered by a Bond and the payment of obligations incurred by the Principal in the performance of such contract and is intended as an absolute assignment effective, as to Collateral relating to each contract and without notice or any other action by the Surety, (i) as of the date of the execution and delivery of this Agreement as to each unbonded contract and each contract covered by Bonds executed prior to such date and (ii) as of the effective date of any Bond executed and delivered on or after the date and execution of this Agreement, in either case if an Event of Default (as hereinafter defined) occurs. The possession and use by the Surety for the purposes set forth in the preceding sentence of any assets assigned to the Surety shall not be deemed to be a foreclosure, or a retention in lieu of foreclosure, under the security interest granted to the Surety under Section 5 of this Agreement.

**7. Events of Default.** Each of the following shall constitute Events of Default hereunder (hereinafter called "Events of Default"):

(a) Any abandonment, forfeiture or breach by the Principal of, or failure, refusal or inability of the Principal to perform, this Agreement or the Declarations hereto, any contract (whether or not covered by a Bond) or any Bond liability; the failure, delay, refusal or inability of the Principal to pay bills or other obligations incurred in connection with the performance of any contract (whether or not covered by a Bond); or the commencement or continuation of any proceeding which deprives the Principal of, or interferes with, his use of any of the supplies, tools, plant, machinery, equipment or materials in, on or around the work site under the contract (whether or not covered by any Bond) (collectively, the "Contract Defaults");

(b) The Indemnitors' failure to perform, or comply with, any of the covenants contained in this Agreement or the Declarations hereto or any of the Obligations;

(d) A payment default occurs on any Bond;

(e) Any warranty, representation or statement contained in this Agreement or the Declarations hereto or made or furnished to the Surety (whether orally or in writing) by or on behalf of the Indemnitors in connection with this Agreement, any Bond or any claims thereunder proves to have been false or misleading in any material respect when made or furnished;

(f) Filing of a suit in connection with any levy on or seizure or attachment of any of the Indemnitors' assets with a market value in excess of the Attachment Threshold set forth in the Declaration if such suit, in the opinion of counsel for the Surety, is not being adequately contested by the Indemnitors;

(g) (i) Application by an Indemnitor for or consent to the appointment of, or the taking of possession by, a receiver, custodian, trustee, conservator, liquidator, or the like of itself or of all or a substantial part of its property, (ii) the general assignment by an Indemnitor for the benefit of its creditors, (iii) the commencement by an Indemnitor of a voluntary case under the Bankruptcy Code, (iv) the filing by an Indemnitor of a petition seeking to take advantage of any other law relating to bankruptcy, insolvency, reorganization, winding-up, or composition or readjustment of debts, (v) failure by an Indemnitor to controvert in a timely and appropriate manner, or acquiescence in writing to, any petition filed against it in an involuntary case under the Bankruptcy Code, (vi) the commencement of dissolution proceedings by an Indemnitor, (vii) any board of director action by an Indemnitor for the purpose of effecting any of the foregoing, (viii) the commencement of a proceeding or case, without the application or consent of any Indemnitor, in any court of competent jurisdiction, seeking (1) such Indemnitor's liquidation, reorganization, dissolution or winding-up, or the composition or readjustment of its debts, (2) the appointment of a trustee, receiver, custodian, conservator, liquidator or the like of such Indemnitor or of all or any substantial part of its assets, or (3) similar relief in respect of such Indemnitor under any law relating to bankruptcy, insolvency, dissolution, reorganization, winding-up, or composition or adjustment of debts, if such proceeding or case shall continue undismissed for a period of 60 days, or an order, judgment or decree approving or ordering any of the foregoing shall be entered; or (ix) the entry of an order for relief against any Indemnitor in an involuntary case under the Bankruptcy Code;

(h) Any Indemnitor shall admit in writing its inability, or be generally unable (within the meaning of the Bankruptcy Code), to pay its debts as such debts become due; and

(i) If any Indemnitor is an individual, the Indemnitor's death, disappearance, incompetence, conviction of a felony or imprisonment; and if any Indemnitor is not an individual, any change in the identity, control or existence of the Indemnitor.

**8. Remedies Upon Default.** Upon the happening of an Event of Default, the Surety, or any person or persons designated by the Surety, shall have the right (to the extent applicable to the undertakings by the Principal covered by the Bonds), at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or by the terms of this Agreement and without notice except as may be otherwise required by law:

(a) to execute in the name of the Principal any instruments deemed necessary or desirable by the Surety to provide the Surety with absolute title to the Collateral, to take immediate possession of the assigned funds, property and rights included in the Collateral, to collect such sums as may be due to, and to endorse in the name of, the Principal, and collect any checks, drafts, warrants and other instruments made and issued in payment of any such funds;

(b) to take immediate possession of any assigned Equipment and to use and consume the same if necessary in the performance of any contract by itself or by others;

(c) to take possession of all or any part of the work under any contract covered by a Bond and to complete or arrange for the completion of the same;

(d) to assert and prosecute any right or claim hereby assigned, transferred or conveyed in the name of the Principal and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances;

(e) to exercise any and all rights of a secured party under the Code with respect to any property held by or pledged to the Surety as Collateral; and

(f) (i) to take such measures as the Surety may deem necessary or advisable to preserve, process, develop, maintain, protect, and care for the Collateral or any portion thereof, (ii) to require each Indemnitor to, and each Indemnitor hereby agrees that it will at its expense and upon request of the Surety forthwith, assemble all or part of the Collateral as directed by the Surety and make it available to the Surety, at a place to be designated by the Surety which is reasonably convenient to both parties, and (iii) without notice except as specified below, to sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of the Surety's offices or elsewhere, for cash, on credit or for future delivery, and upon such other terms as the Surety may deem commercially reasonable. Each Indemnitor agrees that, to the extent notice of sale shall be required by law, at least ten days' notice (or such longer time as may be required by law) to such Indemnitor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. The Surety shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. The Surety may adjourn any public or private sale from time to time; in the case of a public sale, such adjournment may be by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

All cash proceeds received by the Surety in respect of any sale of, collection from, or other realization upon all or any part of the Collateral may, in the discretion of the Surety, be held by the Surety as Collateral for, and/or then or at any time thereafter applied in whole or in part by the Surety against, all or any part of the Obligations in such order as the Surety shall elect. Any surplus of such cash or cash proceeds held by the Surety and remaining after payment in full of all Obligations shall be paid over to the Indemnitors or to whosoever may be lawfully entitled to receive such surplus.

**9. Further Assurances.** Upon an Event of Default, the Surety shall have, without limiting or waiving any other rights otherwise available, the right to the following further assurances:

(1) The Indemnitors shall provide information and documents requested by the Surety and meet with the Surety, or at the Surety's option, retain a designated third party to review the Indemnitors' operations and to make recommendations to cure any Event of Default.

(2) If the Indemnitors fail to cure an Event of Default within ten days after the occurrence thereof, or in the Surety's opinion are unable to cure the Event of Default, or fail within ten days after demand for further assurances to satisfy the Surety that they meet and will continue to meet all requirements and financial standards as stated herein or in the Declarations, upon demand, the Indemnitors shall grant, assign, pledge and transfer unto the Surety a security interest in additional collateral (hereinafter "Additional Collateral"), as herein described, to secure the performance and payment of all Obligations, or, at the Surety's option, furnish to the Surety one or more letters of credit (the "Letters of Credit") in form and substance satisfactory to the Surety pursuant to a Letter of Credit Agreement in form and substance satisfactory to the Surety. The amount of the

Additional Collateral and the face amount of the Letters of Credit shall be not less than the full penalty amount of all outstanding Bonds. The Additional Collateral shall consist of U.S. Treasury bills, other cash or cash equivalents acceptable to the Surety and shall be deemed part of the Collateral.

10. **Financing Statement.** This Agreement constitutes a security agreement and a financing statement in accordance with the provisions of the Code. The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a financing statement under the Code, and the Indemnitors shall execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a financing statement or the filing of a financing statement based upon this Agreement in such states, counties and other places as the Surety may deem necessary or desirable.

The Surety may, at its option, file or record this Agreement or any other document executed by any or all of the Indemnitors, individually or jointly, in connection with the application, issuance or execution of any Bond, as a security agreement or as part of a financing statement or as notice of its prior interest and assignment under the provisions of the Code or any other statute or regulation of any jurisdiction or agency. The filing or recording of such document shall be solely at the option of the Surety and the failure to do so shall not release or impair any of the obligations of the Indemnitors under this Agreement. Any copy of this Agreement certified as such by the Surety shall be considered an original for purposes of filing as a financing statement.

11. **Trust Funds.** The Principal agrees and hereby expressly declares that all funds due or to become due under any contract covered by a Bond are trust funds, whether in the possession of the Principal or another and whether designated as trust funds or not, for the benefit and payment of all persons to whom the Principal incurs obligations in the performance of such contract, for which the Surety would be liable under the Bond. If the Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds. Principal shall, upon demand of the Surety and in implementation of the trust hereby created, open an account or accounts with a bank or similar depository designated by the Surety, which account or accounts shall be designated as a trust account or accounts for deposit of such trust funds, and shall deposit therein all monies received pursuant to such contract. Withdrawals from such account shall be by check or similar instrument signed by the Principal and countersigned by a representative of the Surety. Said trust or trusts shall terminate on the payment by the Principal of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of 20 years from the date hereof, whichever shall first occur.

The Principal agrees and hereby expressly declares that title to all materials and supplies specially ordered or fabricated for any contract covered by a Bond shall be held in trust for the benefit of the owner of the improvement being constructed, or the Surety, as their interests may appear, and that possession of such material shall be subject to the direction of such owner and the Surety.

12. **Attorney of Record.** The Indemnitors hereby authorize the Surety in its sole discretion to do the following: (a) if any Bond is given in an action or proceeding in any court, to recognize any attorney of record in such action or proceeding for any party thereto at the date of the execution of such Bond (or such other attorney of record as may be substituted therefor after execution of such Bond) as the authorized representative of such party until the Surety shall have been fully discharged from liability under such Bond; and (b) to take such steps as the Surety may deem necessary or proper to obtain release from liability from any such Bond.

13. **Protection of Other Sureties.** If the Surety shall procure any other company or companies to execute or join with it in executing or reinsuring any Bond, this Agreement shall inure to the benefit of such other company or companies and its or their successors and assigns, so as to give to it or them a direct right of action against the Indemnitors to enforce this Agreement and, in that event, the word "Surety," wherever used herein, shall be deemed to include such company or companies, as its or their respective interests may appear.

14. **Suretyship Waivers.** The Indemnitors hereby agree that they shall at all times keep themselves intimately familiar with the financial condition of the Principal and with the status of all projects bonded by the Surety.

The Indemnitors, other than the Principal with respect to such Bond, hereby waive notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Surety or the rights or liabilities of the Indemnitors.

With respect to any Bond executed on behalf of the Principal, the Surety is authorized, without notice to the other indemnitors, to assent to any change whatsoever in such Bond and any contract covered by such Bond, including, but not limited to, any change in the time for the completion of the contract and for payments or advances thereunder, to assent to or take any assignment, to execute or consent to the execution of any continuations, extensions, renewals, enlargements, modifications, changes or alterations of any Bond and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, and the other Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or may substantially increase the liability of the other Indemnitors.

The other Indemnitors shall have no rights of indemnity or subrogation against the Principal or his property until all Obligations have been satisfied in full. Failure of the Surety to pursue any remedy against any one or more of the Indemnitors shall not release or waive any right against any other Indemnitor.

The Surety is not required to exhaust its remedies or rights against the Principal or to await receipt of any dividends from the legal representatives of the Principal before asserting its rights under this Agreement against any other Indemnitor.

The liability of any Indemnitor hereunder shall not be affected by the failure of such Indemnitor or any other Indemnitor to sign any Bond, or by the failure of any other Indemnitor to sign this Agreement, or by the failure to obtain any other indemnity or security that any person claims should have been obtained, or by the release of any indemnity or any other indemnitor under this Agreement or any other indemnity, or the return or exchange of any collateral that may have been obtained. If any party signing this Agreement is not bound for any reason, the obligations hereunder shall nevertheless be binding on each and every other Indemnitor.

Separate suits may be brought on this Agreement against any or all Indemnitors and the bringing of a suit or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action whether theretofore or thereafter arising.

The Surety is hereby expressly authorized to settle any claim based upon this Agreement with any one or more of the Indemnitors individually, and such settlement or compromise shall not affect the liability of any of the other Indemnitors except to reduce the amount of the Obligations by the amount of the settlement received.

15. **Declination of Suretyship.** The parties agree that the Surety, in its sole and absolute discretion, may decline to execute or participate in or procure the execution of any bond applied for by the Principal or any other Indemnitor without incurring any liability whatsoever to the Principal or to any other Indemnitor. If the Surety shall execute a bid or proposal Bond or any similar undertaking, it may nevertheless decline to execute any and all bonds that may be required in connection with any award made on the proposal for which the bond or undertaking is given, and the Principal shall have the right, but not the obligation, to procure from another surety any bonds that may be required in connection with any award under the proposal for which the bond or undertaking is given.

16. **Attorney-in-Fact.** The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their Attorney-in-Fact with the right, but not the obligation, to exercise all of the rights of Indemnitors or any of them to make, execute and deliver any

this Agreement including, but r    nited to, the right to execute the instruments intended    e herein given to the Surety under all other provisio representing payment of contrac. monies and to execute any financing statements as contemplated in Section 8, to endorse checks and other instrum and affirm all acts and actions taken and done by the Surety or its designee as such Attorney-in-Fact. The Indemnitors hereby r

**17. Continuing Obligations.** The obligations of the Indemnitors hereunder shall continue in full force and effect until terminated by or more Indemnitors. Any Indemnitor may give the Surety written notice by registered mail of his desire to terminate this Agreement but any s notice of termination shall not operate to modify, bar, discharge, limit, affect, or impair any obligations of the Indemnitors hereunder with resp to Bonds executed prior to the termination of the 30-day period beginning on the date of the receipt of such notice or with respect to Bo executed after the date of the termination of such 30-day period (i) upon the award of a contract to the Principal on a bid or proposal with resp to which the Surety has executed a bid or proposal bond or similar undertaking prior to such date, or (ii) which the Surety has otherwise beco obligated to execute prior to such date. Any notice of termination given hereunder shall operate only with respect to the indemnitors on wh behalf such notice of termination shall have been given.

**18. Information.** The Indemnitors will promptly furnish to the Surety such information as it may request from time to time concerni their financial condition, the status of work under any contract (whether or not covered by a Bond), the condition of the performance of any su contract, and the payment of obligations incurred in connection therewith. The Indemnitors shall provide quarterly reports to the Surety regardi all construction or service contracts (whether or not bonded by the Surety) in such detail and in such format as may be reasonably requested b the Surety. Each Indemnitor represents, warrants and covenants that all information provided in, or in connection with any application for, any Bor or in connection with this Agreement is complete and accurate. The Surety may at reasonable times and places and from time to time examine an copy the books, records and accounts of the Indemnitors and inspect the work at any project (whether or not covered by any Bond).

The Surety may obtain information concerning the affairs and operations of the Indemnitors and any transaction between or amon them from any banks, depositories, obligees of the Bonds, material men, supply houses, credit reporting agencies and any other person.

Each Indemnitor represents and warrants that any financial statement submitted by or on its behalf to the Surety, whether prior to the date of the Agreement or in the future, is (or will be) complete and correct and fairly presents (or will fairly present) the financial condition of suc Indemnitor as of the date of such financial statement and the results of the operations of such Indemnitor for the periods covered by such statements, all in accordance with generally accepted accounting principles consistently applied.

**19. Consent to Jurisdiction; Service of Process; Choice of Law.** Each Indemnitor hereby submits to personal jurisdiction in each jurisdiction where a loss under or in respect of any Bond occurs. If any proceeding is brought against the Surety and the Surety desires to join any Indemnitor by reason of the undertakings in this Agreement, each Indemnitor agrees that he will, upon written notice of the Surety to do so, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of such Indemnitor's choice. If any Indemnitor fails upon such a notice so to appear, such Indemnitor hereby designates the Secretary of State or territory in which proceedings are pending as his agent for the service of process in any such proceeding. With respect to any action brought by the Surety on this Agreement in a jurisdiction in which one or more Indemnitors reside, are domiciled, are doing business or are found, each Indemnitor who is not in the jurisdiction hereby designates each Indemnitor who is in such jurisdiction as his agent to receive on his behalf service of process in such action.

This Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to disputes occurring entirely within such State.

**20. Scope of Agreement; Prior Indemnities.** This Agreement applies to all Bonds executed or procured by the Surety for the Principal, in his own name or as co-adventurer with others, whether before or after the execution and delivery of this Agreement, and from time to time until this Agreement is terminated in accordance with its terms. The Indemnitors waive any defense that this Agreement was executed after the date of any Bond and admit and acknowledge that such Bond was executed pursuant to the Indemnitors' request and in reliance on the Indemnitors' promise to execute this Agreement.

The Bonds have been or will be issued for the purpose of providing assurances to the obligees under the Bonds concerning performance or fulfillment of certain contractual, statutory or other undertakings by the Principal, all as described in more detail in each individual Bond. This Agreement is intended to cover the full range of different types of Bonds which might be issued by the Surety, and nothing in this Agreement shall be construed to limit the types of Bonds covered by the Agreement. To the extent that particular provisions of this Agreement are applicable only to certain types of Bonds, the inclusion of such provisions in this Agreement is for the purpose of specifying in more detail the parties' rights and obligations with respect to such types of Bonds and their inclusion shall not limit the applicability of other provisions of this Agreement to other types of Bonds.

The Indemnitors acknowledge that they have a substantial material and beneficial interest in obtaining bonds on behalf of various related companies. Accordingly, this Agreement shall apply to any bonds executed on behalf of any subsidiary, affiliated partnership, joint venture, affiliate or corporation of the Indemnitors, now existing or hereafter formed or acquired, and whether partially or wholly owned or controlled, as fully as if the names and signatures of such subsidiaries or affiliates appeared herein as Principal.

**21. Remedies Cumulative; No Waiver.** All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. In addition, the security interest granted herein and all other rights, powers and remedies given to the Surety by this Agreement shall be and are an addition to, and not in derogation of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitors or others whether by the terms of any other agreement (including, without limitation, any other indemnity agreement previously or hereafter entered into by any Indemnitor), by operation of law or otherwise, including, without limitation, the Surety's rights of equitable subrogation.

No failure to exercise, and no delay in exercising, any right, power or remedy hereunder or under any document delivered pursuant hereto shall impair any right, power or remedy which the Surety or the indemnitors may have, nor shall any such delay be construed to be a waiver of any such rights, powers or remedies, or an acquiescence in any breach or default under this Agreement of any document delivered pursuant hereto, nor shall any waiver by the Surety or the Indemnitors, respectively, of any breach or default of the Indemnitors or the Surety, respectively, hereunder be deemed a waiver of any default or breach subsequently occurring.

**22. Waiver of Homestead Rights.** The Indemnitors hereby waive and abandon, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession of the United States.

**23. Interest.** All sums payable to the Surety under this Agreement shall bear interest if not paid on or before the tenth day after demand therefor made by the Surety at an annual rate equal to the lesser of (i) three percent plus the rate announced by Bank of America N.T. & S.A. from time to time as its reference rate or (ii) the maximum rate permitted by applicable law.

60768-11-99

360768-12-99

**24. Definitions.** In this Agreement, the plural term shall include the singular and the singular shall include the plural, as the circumstances require. The masculine pronoun shall be read as feminine or neuter as circumstances require. The word "person" shall include individuals, partnerships, corporations and associations.

**25. Effect of Partial Invalidity.** If any part of this Agreement shall be void under the law of the place governing the construction hereof, then such part only shall be considered as deleted and the remainder of this Agreement shall endure in full force and effect.

**26. Integration; Modification.** This writing (including the Declaration) and the Bonds constitute the entire agreement among the Principal, the Indemnitors, and the Surety regarding the execution of the Bonds and the rights and obligations of the parties hereto with respect to the Bonds. This Agreement and the rights and remedies of the Surety hereunder may not be waived, changed, or modified orally. No written waiver, change, or modification shall be effective unless signed by an officer or other authorized representative of the Surety. To the extent that there may be other agreements relating to the Bonds which have been executed by persons other than the Indemnitors, this Agreement shall not supersede such previous agreements as to such other persons and such previous agreements shall remain in full force and effect as to such other persons.

**27. Assignment.** Without the consent of the Principal or the Indemnitors but subject in all cases to any consents required of obligees or by applicable law, the rights and obligations of the Surety under this Agreement and the Bonds may be assigned to any financially responsible entity licensed to issue bonds in the jurisdictions in which the assigned Bonds were issued. In addition, the Surety may assign all or any part of its rights under this Agreement to any person, including but not limited to affiliates of the Surety.

**28. Representations.** EACH INDEMNITOR REPRESENTS TO THE SURETY THAT HE HAS CAREFULLY READ THE ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN, OR, TO THE EXTENT SUCH OTHER AGREEMENTS OR UNDERSTANDINGS EXIST, THEY ARE HEREBY SUPERSEDED BY THIS AGREEMENT.

29. SEE BELOW

30. SEE BELOW

IN TESTIMONY WHEREOF, the Indemnitors, intending to be legally bound hereby, have hereunder set their hands and affixed their seals as of the _____ day of _September_ , _2d_ .

Witness or Attest

ATTEST _Mildred H. Frazier_
MILDRED H. FRAZIER, CORPORATE/SECRETARY

**Principal:**

C. E. FRAZIER CONSTRUCTION COMPANY, INC.

_C. E. Frazier Jr._
Address   C. E. FRAZIER, JR., PRESIDENT                    (Seal)

P. O. BOX 2039
RIDGELAND, MS  39158

Tax Identification No. _64-0532334_

ATTEST _Phyllis E. Frazier_
PHYLLIS E. FRAZIER, CORPORATE SECRETARY

**Additional Signatories:**

PRYOR & FRAZIER CONSTRUCTION, INC.

_C. E. Frazier Jr._
Address   C. E. FRAZIER, JR., PRESIDENT                   (Seal)

P. O. BOX 2355
TUPELO, MS  38803-2355

Tax Identification No. _64-0808729_

WITNESS _Clara Kelly Hogan_

FRAZIER DEVELOPMENT, LLC

_Claiborne Frazier_
Address CLAIBORNE FRAZIER, MANAGING MEMBER          (Seal)

P. O. BOX 2039
RIDGELAND, MS  39158

Tax Identification No. _64-0903931_

WITNESS _Mary A. Wentworth_

_C. E. Frazier Jr._
C. E. FRAZIER, JR., INDIVIDUALLY

Address _430 ST ANDREWS_                              (Seal)

_JACKSON, MS  39211_

Tax Identification No. _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_

Address for all Sureties (as secured party)

c/o FIREMAN'S FUND INSURANCE COMPANY, Agent
Surety Department
777 San Marin Drive
Novato, CA 94998

DATED _Sept. 28, 2001_

ITEM NUMBER 29

30. IT IS UNDERSTOOD AND AGREED THAT THIS INDEMNITY AGREEMENT DOES NOT COVER OR
EXTEND TO ANY ASSETS WHICH PHYLLIS E. FRAZIER MAY IN THE FUTURE BE GIVEN OR
WILLED BY HER PARENTS, MR. AND MRS. L. E. ELLIOTT, OR THEIR ESTATE.  THIS
PARTIAL WAIVER OF INDEMNITY IS TO SPECIFICALLY INCLUDE ANY AND ALL SHARES
OF RIPLEY VIDEO CABLE COMPANY, INC. OF RIPLEY, MS.


WITNESS _Kelly Morgan_

_Phyllis E. Frazier_
PHYLLIS E. FRAZIER, INDIVIDUALLY
                                              (Seal)
Address _430 ST. ANDREWS_
_____ JACKSON, MS  39211_

Tax Identification No. _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_


WITNESS _Mary A. Wentworth_

**Additional Signatories:**
_Austin Frazier_
AUSTIN FRAZIER, INDIVIDUALLY
                                              (Seal)
Address _633 WENDOVER WAY_
_____ RIDGELAND, MS  39157_

Tax Identification No. _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_


WITNESS _Amelia P. Martin_

_Claiborne Frazier_
CLAIBORNE FRAZIER, INDIVIDUALLY
                                              (Seal)
Address _144 OVERLOOK POINTE DRIVE_
_____ RIDGELAND, MS  39157_

Tax Identification No. _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_


                                              (Seal)
Address _____

Tax Identification No. _____


Address for all Sureties (as secured party)

c/o FIREMAN'S FUND INSURANCE COMPANY, Agent
Surety Department
777 San Marin Drive
Novato, CA 94998

360768-11-99·

**CORPORATE ACKNOWLEDGMENT(S)**

STATE OF _Mississippi_ }
COUNTY OF _Hinds_ } SS:

On this _24th_ day of _September_ _2001_, before me, the undersigned,
a Notary Public in and for said State, personally appeared _C. E. FRAZIER, JR._, known to me (or proved to
me on the basis of satisfactory evidence) to be the _PRESIDENT_, and
_PHYLLIS E. FRAZIER_, known to me (or proved to me on the basis of satisfactory evidence) to be the
_CORPORATE SECRETARY_ of the _PRYOR & FRAZIER CONSTRUCTION INC._ the
corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant
to its by-laws or a resolution of its board of directors.

_____
NOTARY PUBLIC
My commission expires _December 8, 2002_

**CORPORATE ACKNOWLEDGMENT(S)**

STATE OF _____ }
COUNTY OF _____ } SS:

On this _____ day of _____, _____, before me, the undersigned,
a Notary Public in and for said State, personally appeared _____, known to me (or proved to
me on the basis of satisfactory evidence) to be the _____, and
_____, known to me (or proved to me on the basis of satisfactory evidence) to be the
_____ of the _____ the
corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant
to its by-laws or a resolution of its board of directors.

_____
NOTARY PUBLIC
My commission expires _____

**CORPORATE ACKNOWLEDGMENT(S)**

STATE OF _____ }
COUNTY OF _____ } SS:

On this _____ day of _____, _____, before me, the undersigned,
a Notary Public in and for said State, personally appeared _____, known to me (or proved to
me on the basis of satisfactory evidence) to be the _____, and
_____, known to me (or proved to me on the basis of satisfactory evidence) to be the
_____ of the _____ the
corporation that executed the within instrument and acknowledged to me that such corporation executed the within instrument pursuant
to its by-laws or a resolution of its board of directors.

_____
NOTARY PUBLIC
My commission expires _____

**Fireman's Fund**

Copy of Resolution

At a _Special_ (Regular or Special) meeting of the Board of Directors of the PRYOR & FRAZIER CONSTRUCTION, INC.

_____, (hereinafter called Company), duly called and held on the _24th_ day of _September_ 19_2001_, a quorum being present, the following Preambles and Resolutions were adopted:

"WHEREAS, this Company is materially interested through _____
STOCK OWNERSHIP OF PRINCIPAL STOCKHOLDERS

(Here insert nature of interest, such as stock ownership, sale of merchandise, sale of materials, etc.)

in the transaction appertaining to VARIOUS CONTRACT SURETY BONDS AND ALL OTHER UNDERTAKINGS

(Describe nature of transaction wherein bond or undertaking is required)

and in future transactions in connection with which C. E. FRAZIER CONSTRUCTION COMPANY, INC. AND

FRAZIER DEVELOPMENT, LLC

(Insert name of Company on behalf of which bond is requested)

has applied to FIREMAN'S FUND INSURANCE COMPANY, THE AMERICAN INSURANCE COMPANY, NATIONAL SURETY CORPORATION, ASSOCIATED INDEMNITY CORPORATION, AMERICAN AUTOMOBILE INSURANCE COMPANY, WARNER INSURANCE COMPANY, or any other present or future subsidiary or affiliate of FIREMAN'S FUND INSURANCE COMPANY (any one or all of which are hereinafter referred to as the "Surety") for a bond or undertaking and will from time to time make application to Surety for additional bond or bonds, undertaking or undertakings; and

WHEREAS, the Surety is willing to execute as surety such bond or undertaking heretofore applied for, and may in its discretion execute additional bond or bonds, undertaking or undertakings in connection with the aforementioned future transactions, upon the written indemnity of this Company;

RESOLVED that the officers authorized to execute documents on behalf of this Company, be and they are hereby authorized and empowered to execute any indemnity agreement or agreements, specific and/or general, required by the Surety as consideration for the execution by it of any bond or bonds, undertaking or undertakings on behalf of

C. E. FRAZIER CONSTRUCTION COMPANY, INC. AND FRAZIER DEVELOPMENT, LLC

in connection with the matter or transaction above described and with the aforementioned future transactions;

RESOLVED FURTHER, that the said officers be and they are hereby authorized and empowered, at any time prior or subsequent to the execution by said Surety of any such bond or bonds, undertaking or undertakings to execute any and all amendments to said indemnity agreement and/or agreements; and to execute any other or further agreements relating to any such bond or bonds, undertaking or undertakings or to any collateral that may have been deposited with the Surety in connection therewith; and to take any and all other actions that may be requested or required by the Surety in the premises."

I, PHYLLIS E. FRAZIER , Secretary

of the PRYOR & FRAZIER CONSTRUCTION, INC.

have compared the foregoing Preambles and Resolutions with the original thereof, as recorded in the Minute Book of said Company, and do certify that the same are correct and true transcripts therefrom, and of the whole of said original Preambles and Resolutions.

Given under my hand and the seal of the Company, in

the City of _Jackson_ , State of _Ms_

this _24_ day of _September_ , 19_2001_

_Phyllis E. Frazier_

Secretary.

360067-9-94 (General)

**Fireman's Fund**

**Copy of Resolution**

At a _Special_ meeting of the Board of Directors of the **C. E. FRAZIER CONSTRUCTION COMPANY, INC.**
(Regular or Special)

_____, (hereinafter called Company), duly called and held on the _24th_ day of _September_

_2001_, a quorum being present, the following Preambles and Resolutions were adopted:

"WHEREAS, this Company is materially interested through _____

STOCK OWNERSHIP OF PRINCIPAL STOCKHOLDERS _____
(Here insert nature of interest, such as stock ownership, sale of merchandise, sale of materials, etc.)

in the transaction appertaining to _VARIOUS CONTRACT BONDS AND ALL OTHER UNDERTAKINGS_

(Describe nature of transaction wherein bond or undertaking is required)

and in future transactions in connection with which _PRYOR & FRAZIER CONSTRUCTION, INC. AND_
FRAZIER DEVELOPMENT, LLC _____

(Insert name of Company on behalf of which bond is requested)

has applied to FIREMAN'S FUND INSURANCE COMPANY, THE AMERICAN INSURANCE COMPANY, NATIONAL SURETY CORPORATION, ASSOCIATED INDEMNITY CORPORATION, AMERICAN AUTOMOBILE INSURANCE COMPANY, WARNER INSURANCE COMPANY, or any other present or future subsidiary or affiliate of FIREMAN'S FUND INSURANCE COMPANY (any one or all of which are hereinafter referred to as the "Surety") for a bond or undertaking and will from time to time make application to Surety for additional bond or bonds, undertaking or undertakings; and

WHEREAS, the Surety is willing to execute as surety such bond or undertaking heretofore applied for, and may in its discretion execute additional bond or bonds, undertaking or undertakings in connection with the aforementioned future transactions, upon the written indemnity of this Company;

RESOLVED that the officers authorized to execute documents on behalf of this Company, be and they are hereby authorized and empowered to execute any indemnity agreement or agreements, specific and/or general, required by the Surety as consideration for the execution by it of any bond or bonds, undertaking or undertakings on behalf of

PRYOR & FRAZIER CONSTRUCTION, INC. AND FRAZIER DEVELOPMENT, LLC _____

in connection with the matter or transaction above described and with the aforementioned future transactions;

RESOLVED FURTHER, that the said officers be and they are hereby authorized and empowered, at any time prior or subsequent to the execution by said Surety of any such bond or bonds, undertaking or undertakings to execute any and all amendments to said indemnity agreement and/or agreements; and to execute any other or further agreements relating to any such bond or bonds, undertaking or undertakings or to any collateral that may have been deposited with the Surety in connection therewith; and to take any and all other actions that may be requested or required by the Surety in the premises."

I, _MILDRED H. FRAZIER_ _____, Secretary

of the _C. E. FRAZIER CONSTRUCTION COMPANY, INC._ _____

have compared the foregoing Preambles and Resolutions with the original thereof, as recorded in the Minute Book of said Company, and do certify that the same are correct and true transcripts therefrom, and of the whole of said original Preambles and Resolutions.

Given under my hand and the seal of the Company, in

the City of _Jackson_, State of _Ms_

this _24_ day of _September_, _2001_

_Mildred H. Frazier_
Secretary.

360067-9-94 (General)

# STANDARD FORM OF AGREEMENT BETWEEN
# THE OWNER AND THE CONTRACTOR

## SECTION 00500

This Agreement made the ___18th___ day of ___December___, 19_2000_ between the Owner.

> Bureau of Building, Grounds and Real Property Management
> 1501 Walter Sillers Building
> Jackson, MS  39201-1198

created by Section 7-1-451 et seq., and Section 31-11-1, et seq., Mississippi Code of 1972, Annotated, and acting for the State of Mississippi; and the Contractor:

| | |
|---|---|
| Business Name | Pryor & Frazier Construction, Inc. |
| Address | P. O. Box 2355 |
| City/State/Zip | Tupelo, MS  38803-2355 |

The Contractor is a (check and complete one of the following):

___X___  CORPORATION solely organized and existing under the laws of the State of ___Mississippi___ and having its principal office in ___Tupelo___, ___Lee___, ___MS___
  (City)  (County)  (State)

_____  PARTNERSHIP of the following (list all partners):

_____  SOLE PROPRIETORSHIP

PERRY BOLDING
JAN 0 1 2001
SURETY DEPT.

Contractor's Taxpayer Identification Number:  64-0808729

For the following Project:

| | |
|---|---|
| Project Number | GS #105-271 |
| Project Title | Landscape Architecture Building |
| Using Agency | Mississippi State University |
| Location | Starkville, MS |

This Agreement entered into as of the day and year first written above:

OWNER:  BUREAU OF BUILDING, GROUNDS AND
        REAL PROPERTY MANAGEMENT

By: _____
    (Signature)

_____
    (Name and Title)

CONTRACTOR:

By: _Mike Williams_
    (Signature)

_____
    (Name and Title)

APPROVED AS TO FORM:

By: _____
    (Signature of Attorney)

RECEIVED
JAN 2001
SURETY DEPARTMENT

THE OWNER AND THE CONTRACTOR AGREE AS SET FORTH IN PAGES ONE THROUGH THREE, ARTICLES ONE THROUGH FIVE, AS FOLLOWS:

Division 0

EXHIBIT

"B"

## ARTICLE 1: THE WORK AND CONTRACT DOCUMENTS

**1.1 THE WORK**

1.1.1 The Contractor will perform all the work required by the Contract Documents for the Project indicated above.

**1.2 THE CONTRACT DOCUMENTS**

1.2.1 The Contract Documents which constitute the entire Agreement between the Owner and the Contractor, are enumerated as follows.

1.2.2 Project Manual dated 11 September 2000 _____

BIDDING REQUIREMENTS
  Advertisement for Bids
  Instructions to Bidders
  Proposal Form
STANDARD FORM OF AGREEMENT BETWEEN THE OWNER AND THE CONTRACTOR
CONTRACT BOND
POWER OF ATTORNEY
CERTIFICATE OF INSURANCE
CONDITIONS OF THE CONTRACT
  General Conditions
  Supplementary Conditions
  Labor Requirements
  Addenda
SPECIFICATIONS
  Division One:  General Requirements
  Division One Supplements
  Division Two:  Site Work
  Division Three:  Concrete
  Division Four:  Masonry
  Division Five:  Metals
  Division Six:  Wood and Plastics
  Division Seven:  Thermal and Moisture Protection
  Division Eight:  Doors and Windows
  Division Nine:  Finishes
  Division Ten:  Specialties
  Division Eleven:  Equipment
  Division Twelve:  Furnishings
  Division Thirteen:  Special Construction
  Division Fourteen:  Conveying Systems
  Division Fifteen:  Mechanical
  Division Sixteen:  Electrical

1.2.3 Addenda
  Addendum No. 1, dated 11 September 2000 _____
  Addendum No. 2, dated 2 October 2000 _____
  Addendum No. 3, dated 9 October 2000 _____
  Addendum No. 4, dated _____
  Addendum No. 5, dated _____

1.2.4 Drawings dated 11 September 2000 _____
  Sheets No. _C1____ through _C7____     Sheet No. P1.1 through P4.2
  Sheets No. _A0.1__ through A8.1____     Sheet No. E1.1 through E4.1
  Sheets No. _ALT1__ through _—_____
  Sheets No. _S0.1__ through S3.4____
  Sheets No. _M1.1__ through M5.1____

1.2.5 Other documents, dated _____
  _____
  _____

**Division 0**

## ARTICLE 2: CONTRACT SUM

### 2.1    CONTRACT SUM

2.1.1    The Owner will pay the Contractor in current funds for the performance of the work, subject to additions and deductions by Change Order as provided in the Contract Documents, the Contract sum of Three million two hundred seventy thousand & no/100 Dollars ($3,270,000.00). The Contract sum is determined as follows:

| | | | | |
|---|---|---|---|---|
| Base Bid | | | | $ 3,270,000.00 |
| Alternate No. _____ | ( ) Adds | ( ) Deducts | | $ NA |
| Alternate No. _____ | ( ) Adds | ( ) Deducts | | $ NA |
| Alternate No. _____ | ( ) Adds | ( ) Deducts | | $ NA |
| Alternate No. _____ | ( ) Adds | ( ) Deducts | | $ NA |
| Alternate No. _____ | ( ) Adds | ( ) Deducts | | $ NA |
| Total Contract Sum | | | | $ 3,270,000.00 |

### 2.2    LIQUIDATED DAMAGES

2.2.1    The stipulated liquidated damages described in Paragraph 9.11 of the *Supplementary Conditions* are in the amount of _____ Three Hundred _____ Dollars ($300.00) for each calendar day.

## ARTICLE 3: CONTRACT TIME

### 3.1    TIME

3.1.1    The work to be performed under this Contract shall be commenced upon the date stated in the *Notice to Proceed*. The work is to be substantially complete, subject to approved Change Orders, no later than 390 calendar days from the date stated in the *Notice to Proceed*.

## ARTICLE 4: PAYMENTS AND FINAL PAYMENTS

### 4.1    PROGRESS PAYMENTS

4.1.1    Based upon applications for payment submitted to the Professional by the Contractor and *Certificates for Payment* issued by the Professional, the Owner will make progress payments on account of the Contract sum to the Contractor as provided in the Contract Documents.

### 4.2    FINAL PAYMENT

4.2.1    Final payment constituting the entire balance of the Contract sum will be paid by the Owner to the Contractor when the work has been completed, the Contract fully performed and a final Certificate for Payment has been issued by the Professional and approved by the Owner.

## ARTICLE 5: MISCELLANEOUS PROVISION

### 5.1    DEFINITION OF TERMS

5.1.1    Terms used in this Agreement which are defined in the Conditions of the Contract will have the meanings designated in those Conditions.

### 5.2    CONTRACTOR'S INTEREST IN AGREEMENT

5.2.1    The Contractor will not assign, sublet, or transfer the interest in this Contract agreement without the written consent of the Owner. The Owner and Contractor hereby agree to the full performance of the covenants contained herein.

### 5.3    PROFESSIONAL

5.3.1    The Professional assigned to this Project is as follows:

Name  Dale and Associates Architects, P.A.

Address  120 North Congress Street, Suite 110  Jackson, MS  39201

Telephone  601-352-5411                    Fax Number  601-352-5362

*** END OF SECTION ***

# CONTRACT BOND

## SECTION 00600

### I. PREAMBLE

KNOW ALL MEN BY THESE PRESENTS: THAT **PRYOR & FRAZIER CONSTRUCTION, INC.**

Principal, a **Corporation** residing

at **Tupelo, Mississippi**, authorized to do business in the State of Mississippi

under the laws thereof, and **THE AMERICAN INSURANCE COMPANY** Surety, a corporation

of the State of **Nebraska** authorized to do business in the State of Mississippi under the laws

thereof, are held and firmly bound unto the Bureau of Building, Grounds and Real Property Management of the State of Mississippi, Obligee, hereinafter referred to as "Owner," for the use and benefit of the Owner and those claimants and others set forth hereinbelow and described in Sections 31-5-51 and 31-5-3, **Mississippi Code of 1972, Annotated,** as amended, in the amount of **Three Million Two Hundred Seventy Thousand and 00/100--------------------**Dollars (\$ **3,270,000.00** ), lawful money of the United States, for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated **December 18**, **2000**

entered into a Contract with the Owner for the following:

**GS #105-271, Landscape Architecture Building, Mississippi State University, Starkville, Mississippi**

PERRY BOLDING

JAN 01 2001

SURETY DEPT.

as provided in the said Contract and in accordance with the Contract Documents. All of the terms and provisions of the above mentioned Contract, drawings, Project Manual, and addenda are by reference made a part hereof and fully incorporated herein, and are hereinafter referred to as "the Contract". All of the terms and provisions of Sections 31-5-51, 31-5-3, supra Section 31-5-53 of the **Mississippi Code of 1972, Annotated** ,as amended, and all other code sections cited herein are also by reference made a part hereof and fully incorporated herein.

### II. PERFORMANCE BOND

NOW, THEREFORE, the condition of this Performance Bond is such that if Principal shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise, it shall remain in full force and effect, subject however, to the following conditions:

Whenever the Owner has performed its obligation but the Principal has defaulted under the terms of the Contract, or any portion thereof, and the Owner has declared the Principal to be in default, the Surety shall promptly:

1. Remedy the default, or
2. Complete the Contract in accordance with its terms and conditions, or
3. Procure the completion of the Contract in accordance with its terms and conditions.

Even if there should be a succession of defaults, the Surety is responsible for completion of the Contract. The Surety shall provide sufficient funds to pay the cost of completion of the Contract in its entirety including other costs and damages for which the Surety may be liable thereunder, less the balance of the Contract price. The term "balance of the Contract price," as used in this paragraph, shall mean the total amount payable by Owner to Principal under the Contract and any Change Orders thereto, less the amount paid by Owner to Principal.

### III. LABOR AND MATERIAL PAYMENT BOND

NOW, THEREFORE, the condition of this Labor and Material Payment Bond is such that if Principal shall promptly make payments to all persons supplying labor or material used in the prosecution of the work under said Contract, then this obligation shall be null and void; otherwise, it shall remain in full force and effect; however, the Owner shall not be liable for the payment of any costs or expenses of any suit described in Subsection (2) of Section 31-5-51, supra.

**DIVISION 0**

**EXHIBIT**

**"C"**

## IV.  BOND FOR PAYMENT OF TAXES AND OTHER ASSESSMENTS

NOW THEREFORE, the condition of this Bond for Payment of Taxes and Other Assessments is such that if Principal shall promptly make payment of all taxes, licenses, assignments, contributions, damages, penalties, and interest thereon, when and as the same may lawfully be due the State of Mississippi, or any County, Municipality, Board, Department, Commission, or political subdivision thereof, by reason of and directly connected with the performance of said Contract or any part thereof as provided by Sections 27-65-1, 27-65-21, 27-67-1, and 31-5-3. **Mississippi Code 1972, Annotated,** or any other applicable statute or other authority, then this obligation shall be null and void; otherwise, it shall remain in full force and effect.

## V. GENERAL CONDITIONS

The following conditions apply to all three (3) of the above mentioned Bonds

1. The Performance Bond is for an amount equal to the full amount of said Contract.
2. The Labor and Material Payment Bond is for an amount equal to the full amount of said Contract.
3. If any changes are made in the work, or any extensions of time are granted, or any increases in the total dollar amount of the Contract are made, such changes, extensions, increases or other forbearance on the part of either the Owner or the Principal will not, in any way, release the Principal and Surety, or either of them, from their liability hereunder, or any portion thereof, notice to the Surety of any such change, extension, increase, or forbearance being expressly waived.
4. These Bonds are governed by and shall be construed in accordance with Mississippi law. Any inconsistency with these Bonds and any provision of Mississippi law shall be remedied by deleting the inconsistent portion of these Bonds and leaving the remaining consistent portions in full force and effect.

Signed and sealed this ____18th____ day of ____December____, ____2000____

| | |
|---|---|
| __THE AMERICAN INSURANCE COMPANY__ | __PRYOR & FRAZIER CONSTRUCTION, INC.__ |
| SURETY | PRINCIPAL |
| By: _____ | By: _____ |
| (Signature) | (Signature) |
| __W. E. French__         __Attorney-in-Fact__ | _____ |
| (Name and Title) | (Name and Title) |
| __P. O. Box 1490__ | __P.O. Box 2355__ |
| (Address) | (Address) |
| __Jackson, MS  39215-1490   (601)960-8200__ | __Tupelo, MS  38803-2355__ |
| (City/State/Zip/Phone) | (City/State/Zip/Phone) |

COUNTERSIGNED:

**THE BOTTRELL AGENCY**

MISSISSIPPI RESIDENT AGENT

_____
(Signature)

__W. E. French__              __Resident MS Agent__
(Name and Title)

__P. O. Box 1490__
(Address)

__Jackson, MS  39215-1490   (601)960-8200__

**DIVISION 0**

Form 61-801 (Rev. 11/91)

STATE TAX COMMISSION
JACKSON, MISSISSIPPI

**RIDER**

Bond Number _____

**(SALES, USE, INCOME, FRANCHISE, WITHHOLDING, AND
OTHER MOTOR FUEL (DIESEL FUEL) TAX BOND)**

This rider is attached to and becomes a part of certain performance and/or payment bond executed by

**PRYOR & FRAZIER CONSTRUCTION, INC., Tupelo, MS** _____ as Principal,

(Name and Address)

in favor of **BUREAU OF BUILDING, GROUNDS AND REAL PROPERTY MANAGEMENT** _____ as Obligee,

(Name and Address)

and covering a contract dated _____ **December 18** _____ **2000** _____ , for the construction of

**GS#105-271, Landscape Architecture Building , Mississippi State University, Starkville, MS** _____

(Name Project and Describe)

_____

_____

_____

WHEREAS, under the provisions of Section 27-65-21, Mississippi Code of 1972, as amended, the said Principal is required to and has furnished the attached bond guaranteeing payment of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of entering into said contract.

NOW, THEREFORE, in addition to the obligations set forth in the attached bond, there is hereby imposed the additional obligation by this Rider that the Contractor shall promptly make payment when due of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of the execution of the aforesaid contract.

NOTWITHSTANDING any provision in the performance and/or payment bond, the expiration date for the sureties' responsibilities and/or liabilities under this Rider shall be sixty (60) months from the date the final payment for the project described herein is made, except in the existence of fraud there shall be no expiration date for this Rider.

NOTWITHSTANDING the tax information and return confidentiality provisions contained within Sections 27-65-1 et seq., 27-67-1 et seq., 27-7-1 et seq., 27-13-1 et seq., 27-7-301 et seq., and 27-55-301 et seq., Mississippi Code of 1972, and amendments thereto, principal hereby authorizes the State Tax Commission to release to surety any information relating to any claim against said surety made by the State Tax Commission which is covered by this bond.

SIGNED, SEALED AND DELIVERED, This the _____ **18th** _____ day of _____ **December** _____ **2000**

Filed and approved this the _____ day

of _____ _____ .

**PRYOR & FRAZIER CONSTRUCTION, INC.** _____

Principal

**THE AMERICAN INSURANCE COMPANY** _____

Surety

By _____

Attorney-in-Fact

**W. E. French**

COUNTERSIGNATURE:

_____

Commissioner and Chairman of STATE TAX COMMISSION

By _____

Resident Mississippi Agent

**W. E. French** _____

(Type or Print Name of Agent)

**The Bottrell Agency**

(SEAL)



# FRAZIER
### CONSTRUCTION COMPANY

October 27, 2004

Charles McLemore
Buford Plumbing
P. O. Box 8601
Jackson, Mississippi  39284

RE:   Pearl Lower Elementary School
      Pearl, Mississippi

Dear Charles,

I am in receipt of your letter concerning our unresolved issues.  I am deeply confused on how we got into this dispute however, I am committed to resolving it.  After reviewing your letter, the most I would be in agreement with is splitting the $28,045 to where each party would be responsible for $14,022.  I believe this is extremely fair based on the fact that I feel like I did nothing wrong.  I told you I was under a deadline and you gave me the $46,000 deduct with the list of deducts.  There is no way in the world I would have dreamed up this list of items because I do not know what half of them even were.  Never at any time did you tell me that was only a partial list.  However, I am committed and determined to settle this because I value our relationship with Buford and I don't want anything to get in the way of that.

I am in agreement with Buford being owed $34,285.00 on the Landscape Architecture Building and understand that I am being charged $16,334.45 extra for outside sewer work.  I have just requested more information on this charge because I am not aware of it.  Please provide this to me.  I am committed to paying this balance and would like to know if you would work with me on it a little bit.  I am going to mail $10,000 no later than Monday to apply to the balance.  I would like to request paying $10,000 a month until this balance is paid.  If you are not in agreement with these terms then please let me know so I can figure something else out.  I definitely will be paying what we agree on.

Once again, I value our past relationship with Buford.  I have made it a point to pay all small miscellaneous invoices immediately and have a new system in place to insure this happens.  I am committed to resolving these last issues and certainly look forward to a great future ahead.

Sincerely,

C. E. FRAZIER CONSTRUCTION CO., INC.

Austin Frazier
Vice President

<div style="border:1px solid black; display:inline-block; padding:10px;">
EXHIBIT

"D"
</div>

C.E. Frazier Construction Company, Inc.
P.O.Box 2039 / Ridgeland, MS 39158
5247A Greenway Drive / Jackson, MS 39204 / Telephone: (601) 922-5165 / Fax: (601) 922-7671

Fireman's Fund Insurance Company
The American Insurance Company
National Surety Corporation
Associated Indemnity Corporation
American Automobile Insurance Company

**Fireman's Fund®**

**Proof Of Claim**

**Construction Contract**

B. ALBERT

NOV 0 2 2005

State of ___Mississippi___

County of ___Hinds___

I, ___Howard Buford___, the ___President___ of ___Buford Plumbing Company, Inc.___
   Name of Affiant              Position in firm                    Name of Claimant

of ___P. O. Box 8601, Jackson, MS  39284___, on behalf of said firm, hereby state
                              Address

under oath that said firm between the dates of ___March 27, 2001___ and ___October 17, 2002___ furnished, sold and

delivered ___complete mechanical___ to ___Pryor-Frazier Construction Company___ for the
              Describe services or material          Name of contractor and/or subcontractor if any

construction of ___Landscape Architect Building___ in accordance with a ☒ Subcontract or ☐ Purchase Order,
                       Identify contract

dated ___March 27, 2001___, a copy of which is attached hereto, for the agreed price of $552,000.00 + $16,334.45 Extra

                                                                    19,285.00 + 16,334.45 Extras
none of which has been paid except ___$532,715.00___, and leaving a balance due of ___total of $35,619.45___
                                        State total paid

Attached hereto are ☒ invoices, ☐ delivery tickets and a statement showing the deliveries or progress estimates furnished

___Pryor-Frazier Construction___ and the amount due to claimant therefor; that said firm served notice of said balance due
         Contractor

it by Registered Mail dated _____ on ☐ Surety ☐ Contractor ☐ Owner, (copies attached), that there is no

just credit nor offset due against and balance and that said firm made no assignment of any part of said balance except to

___none___; and that there are no liens or encumbrances against and balance except

that of ___none___; that said firm has paid in full for all labor and material furnished and

supplied it for said job except the claims of the persons or firms whose names and addresses and amounts due to them are as follows,

___none___

The foregoing information is furnished to the surety in support of affiant's claim and if is understood that the furnishing of this form or
the acceptance and/or retention thereof by the surety does not constitute a waiver of any of the terms of the surety's bond nor of any
defenses the surety may have, nor an admission of liability thereunder.

Sworn to and subscribed before me

this ___1st___ day of ___November___ ___2005___.

___Sarah Allbritton___
Notary Public

SIGNED ___Howard Buford___
                    Affiant's Signature

**EXHIBIT**

"E"



**Fireman's Fund®**

Writer's Direct Line:
(415) 899-4386

December 12, 2005

*Via Certified Mail*

C.E. Frazier Construction, Inc.
c/o Austin Frazier, Vice President
500 E. Capitol Way
Jackson, MS 39201

Phyllis E. Frazier, Individually
430 St. Andrews
Jackson, MS 39211

Pryor & Frazier Construction Company
c/o Austin Frazier, Vice President
500 E. Capitol Way
Jackson, MS 39201

Claiborne Frazier, Individually
144 Overlook Pointe Drive
Ridgeland, MS 39157

Austin Frazier, Individually
633 Wendover Way
Ridgeland MS 39157

RE:   Claim No.:      B 454 S03 544192
      Bond No.:       111 4172 7765
      Project:        Landscape Architect Building, Mississippi State University
      Principal:      Pryor & Frazier/C.E. Frazier
      Obligee:        Bureau of Building, Land & Real Property Management
      Subfile:        4, Buford Plumbing Company, Inc.

Dear Indemnitors:

In reliance upon the General Indemnity Agreement (the "Indemnity Agreement") executed by each of you (copy enclosed), The American Insurance Company (the "Surety") issued various surety bonds on behalf of Pryor & Frazier Construction Company ("Pryor & Frazier"), as principal.   Under the terms of the Indemnity Agreement, each of you agreed, jointly and severally, to indemnify the Surety against any and all liability, loss, costs, damages, attorneys' fees and other expenses incurred by the Surety in connection with issuing bonds on behalf of Pryor & Frazier.  You also agreed to deposit collateral security with the Surety, upon demand, in the amount of any reserve established by the Surety.

The Surety has received the captioned claim against the referenced Payment Bond (the "Bond") which Pryor & Frazier has not paid, nor has it offered any objection or basis for nonpayment. Therefore, in the absence of a substantiated objection, the Surety has determined to pay this

Fireman's Fund
Insurance Companies
A member of the
Allianz Group

777 San Marin Drive C88
Surety Claims
Novato, CA 94998
Fax 415.899.4378



**EXHIBIT**

"F"

Indemnitors
December 12, 2005
Page 2

claim, pursuant to our obligations under the Bond.   Please be advised that the Surety's anticipated loss in connection with the foregoing claim is $35,619.45, exclusive of attorney's fees, consultant's fees, costs and other expenses.  Please be further advised that to the extent that the Surety has expended or will expend funds for the payment of this or any other claim under the Bond, including the investigation, evaluation, negotiation, defense or settlement thereof, or as otherwise provided in the Indemnity Agreement or under applicable law, the surety is entitled to and will seek full reimbursement from the Indemnitors for all amounts expended, including all attorneys fees, consultant's fees, costs and other expenses.

The Surety has currently posted a loss reserve of $35,620.  In addition, the Surety has currently set an expense reserve of $3,000 in order to cover our anticipated costs and attorneys' fees and other expenses that may be incurred in connection with our investigation and payment of this claim.  Under the terms of the Indemnity Agreement, the Surety hereby demands that within ten (10) days of the date of this letter, the Indemnitors deposit with the Surety the sum of $38,620, as collateral security on the captioned bond.

The Surety shall have the right to use the deposit, or any part thereof, towards payment or settlement of any liability, loss, or expense for which the Indemnitors would be obligated to indemnify the Surety under the terms of the Indemnity Agreement.   Any payment made or expenses incurred by the surety will be final and binding upon the Indemnitors, and the Surety will look to each of you, as its Indemnitors, for full indemnification of its losses and expenses.

The American Insurance Company hereby reserves all its rights and defenses, whether at law, under the GIA, or in equity; nothing in this letter should be construed as a waiver of any right or defense of The American Insurance Company.

Thank you for your anticipated cooperation.

Very truly yours,

THE AMERICAN INSURANCE COMPANY

Brenda Albert
Associate Surety Counsel

Enclosures

## RELEASE AND SETTLEMENT AGREEMENT

Claim No.:      H 454 S 03 544192

Subfile:        4, Buford Plumbing Company, Inc.

Project:        Landscape Architect Building, Mississippi State University

Obligee:        Bureau of Building, Land & Real Property Management

Claimant:       Buford Plumbing Company, Inc.

Principal:      Pryor & Frazier Construction Company, Inc.

Surety:         The American Insurance Company

Bond:           SCR 111 4172 7765

WHEREAS, the Principal and The American Insurance Company issued the above numbered Bond to the Obligee on the captioned Project; and

WHEREAS, Buford Plumbing Company, Inc. has made a claim under the captioned Bond; and

WHEREAS, Buford Plumbing Company, Inc. has agreed to compromise, settle and satisfy all claims, demands and disputes, which relate to or involve the captioned Bond.

NOW, THEREFORE, Buford Plumbing Company, Inc. hereby agrees as follows:

(1)   Upon receipt by the Undersigned of a check issued by The American Insurance Company in the amount of Thirty-Five Thousand Six Hundred Nineteen and 45/100 dollars ($35,619.45) Buford Plumbing Company, Inc. hereby releases and forever discharges The American Insurance Company and their past, present, and future officers, agents, directors, stockholders, owners, employees, attorneys, insurers, sureties, predecessors, successors, assigns, parents, subsidiaries, and affiliated corporations, and each of them, for or as a result of services, labor, material, equipment or other things of value furnished by Buford

EXHIBIT

"G"

Plumbing Company, Inc. with respect to the Project and from any and all manner of actions, controversies, suits, liens, losses, debts, dues, damages, claims, judgments, bonds, executions and demands of every nature, kind and description whatsoever in law or in equity, whether known or unknown, or whether suspected or unsuspected, Buford Plumbing Company, Inc. had, now has, or hereafter can, shall or may have against The American Insurance Company which relate to, concern or in any way involve the captioned Bond;

(2)     The release given by Buford Plumbing Company, Inc: in the preceding paragraph shall include claims described therein existing as of the date of this agreement or hereinafter arising whether known or unknown, and Buford Plumbing Company, Inc. waives and assumes the risk of such claims which it does not know or suspect to exist in its favor, whether through negligence, ignorance, oversight, error or otherwise;

(3)     Buford Plumbing Company, Inc. bargains, sells, transfers, conveys and assigns to The American Insurance Company its right, title and interest in and to said claim or claims against the Principal and the Obligee and hereby irrevocably appoints The American Insurance Company its true and lawful attorney, with full power and authority in the name or names of Buford Plumbing Company, Inc. to sue for recovery and receive the debt and moneys hereby assigned, and to give good and sufficient releases for the same but all at the cost, risk and for the sole benefit of The American Insurance Company;

(4)     Warrants that it has not sold, assigned or transferred to any person claims that Buford Plumbing Company, Inc. has or may have against either the Principal, the

Obligee, or The American Insurance Company; that Buford Plumbing Company, Inc. and the Undersigned are legally authorized and empowered to execute this instrument, and agrees to indemnify, protect and hold harmless The American Insurance Company from any and all judgments, costs and expenses whatsoever, including reasonable attorney's fees, resulting from a breach of these warranties;

(5)    Warrants and guarantees that the services, labor, materials, equipment or other things of value furnished are in accordance with its subcontract or its purchase order and that the services, labor, materials, equipment or other things of value are in accordance with the plans and specifications, and that all guarantees and warranties required under the terms of its subcontract or purchase order shall remain in full force and effect;

(6)    Agrees to hold harmless, indemnify and to defend The American Insurance Company against any and all claims of any person or entity for the labor, material, equipment or other things of value for which Buford Plumbing Company, Inc. is receiving payment hereunder.

Executed this _17th_ day of _January_, 2006.

BUFORD PLUMBING COMPANY, INC.

By: _Harard Buford_

Title: _Presi_

Page 3 of 4

**ACKNOWLEDGMENT**

Signed and sworn to before me this _17th_ day of _January_, 2006.

_Sarah Allbritton_
Notary Public

4-12-07

FIREMAN'S FUND INSURANCE COMPANY
HOME OFFICE SURETY CLAIM
P.O. BOX 777
NOVATO CA 94998

Policy No.   111 41727765                    Claim No.   H454S03544192

Insured   PRYOR & FRAZIER CONST INC          HCO 450

Payee Name   BUFORD PLUMBING COMPANY, INC.

Send to   BUFORD PLUMBING COMPANY, INC.       Division Code
          P.O. BOX 8601
          JACKSON  MS  39284                  Bank Number   N1

                                              Invoice Number

Explanation For   FULL AND FINAL PAYMENT OF CLAIM ON BOND.

Please contact our office with questions concerning this payment or claim. Any error in
payee name, address or tax identification number should be reported immediately.

Representative Name   BRENDA E ALBERT                    Phone No.   (415)899-4386

From              Thru          IRS#   R640500128        Check Distribution   R
Processor ID   450F252          Check Amount      $35,619.45

Producer Name   BOTTRELL INSURANCE AGENCY                Check No.   49514137
Producer City   JACKSON                 St.   MS

                                              Date of Loss   01/31/02
                                              Issue Date     01/19/06

Detach And Retain For Your Records

CF30S

DO NOT ACCEPT THIS CHECK UNLESS YOU CAN SEE A MULTICOLORED BACKGROUND ON THE FRONT AND AN ARTIFICIAL WATERMARK ON THE BACK WHEN HELD AT AN ANGLE

THE NORTHERN TRUST COMPANY, CHICAGO, IL 0710
PAYABLE THROUGH NORTHERN TRUST DUPAGE, OAK BROOK, IL

Fireman's Fund

Check No.   49514137      70-238
                          719

Policy No.   111 41727765      Claim No.   H454S03544192      Issue Location   NOVATO      Date of Loss   01/31/02
Insured   PRYOR & FRAZIER CONST INC                                                        Issue Date   01/19/06

THIRTY-FIVE THOUSAND, SIX HUNDRED NINETEEN AND 45/100 ------                    $35,619.45

Pay       BUFORD PLUMBING COMPANY, INC.              For   FULL AND FINAL PAYMENT OF CLAI
to the    P.O. BOX 8601                                    M ON BOND.
Order of  JACKSON  MS  39284

EXHIBIT

"H"

SENIOR VICE PRESIDENT AND TREASURER

⑈49514137⑈ ⑈071923828⑈ 0331754⑈18⑈                              0

Form 61-001 (Rev. 11/91)

STATE TAX COMMISSION                    **RIDER**                    Bond Number _____
JACKSON, MISSISSIPPI

### (SALES, USE, INCOME, FRANCHISE, WITHHOLDING, AND
### OTHER MOTOR FUEL (DIESEL FUEL) TAX BOND)

This rider is attached to and becomes a part of certain performance and/or payment bond executed by

**PRYOR & FRAZIER CONSTRUCTION, INC., Tupelo, MS** _____ as Principal,

                                    (Name and Address)

in favor of   **BUREAU OF BUILDING, GROUNDS AND REAL PROPERTY MANAGEMENT** _____ as Obligee,

                                    (Name and Address)

and covering a contract dated _____ **April 4** _____ **2001** _____, for the construction of

**GS#105-267, Montgomery Hall Renovations, Mississippi State University, Mississippi State, Mississippi.**

                                    (Name Project and Describe)

_____

_____

_____

WHEREAS, under the provisions of Section 27-65-21, Mississippi Code of 1972, as amended, the said Principal is required to and has furnished the attached bond guaranteeing payment of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of entering into said contract.

NOW, THEREFORE, in addition to the obligations set forth in the attached bond, there is hereby imposed the additional obligation by this Rider that the Contractor shall promptly make payment when due of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of the execution of the aforesaid contract.

NOTWITHSTANDING any provision in the performance and/or payment bond, the expiration date for the sureties' responsibilities and/or liabilities under this Rider shall be sixty (60) months from the date the final payment for the project described herein is made, except in the existence of fraud there shall be no expiration date for this Rider.

NOTWITHSTANDING the tax information and return confidentiality provisions contained within Sections 27-65-1 et seq., 27-67-1 et seq., 27-7-1 et seq., 27-13-1 et seq., 27-7-301 et seq., and 27-55-301 et seq., Mississippi Code of 1972, and amendments thereto, principal hereby authorizes the State Tax Commission to release to surety any information relating to any claim against said surety made by the State Tax Commission which is covered by this bond.

SIGNED, SEALED AND DELIVERED, This the ___**9th**___ day of _____**April**_____ __**2001**__

Filed and approved this the ___**25th**___ day

of __**June**_____  __**2001**__.              **PRYOR & FRAZIER CONSTRUCTION, INC.**
                                                              Principal

                                              **THE AMERICAN INSURANCE COMPANY**
                                                                                Surety

_____                  By _____
                                                    Attorney-In-Fact
                                                              **W. E. French**

Commissioner and Chairman of STATE TAX COMMISSION    COUNTERSIGNATURE:

                                                      By _____
                                                          Resident Mississippi Agent
(SEAL)                                            **W. E. French**
                                                    (Type or Print Name of Agent)
                                                    **The Bottrell Agency**

**EXHIBIT**

"I"

Form 61-001 (Rev. 11/91)

**STATE TAX COMMISSION**
**JACKSON, MISSISSIPPI**

**RIDER**

Bond Number _____

**(SALES, USE, INCOME, FRANCHISE, WITHHOLDING, AND
OTHER MOTOR FUEL (DIESEL FUEL) TAX BOND)**

This rider is attached to and becomes a part of certain performance and/or payment bond executed by

PRYOR & FRAZIER CONSTRUCTION, INC., Tupelo, MS _____ as Principal,

<div align="center">(Name and Address)</div>

in favor of   BUREAU OF BUILDING, GROUNDS AND REAL PROPERTY MANAGEMENT _____ as Obligee,

<div align="center">(Name and Address)</div>

and covering a contract dated _____ July 16 _____ 2001 ____, for the construction of

GS#104-125, Parkinson Hall Renovaitons, Mississippi University for Women, Columbus, MS.

<div align="center">(Name Project and Describe)</div>

WHEREAS, under the provisions of Section 27-65-21, Mississippi Code of 1972, as amended, the said Principal is required to and has furnished the attached bond guaranteeing payment of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of entering into said contract.

NOW, THEREFORE, in addition to the obligations set forth in the attached bond, there is hereby imposed the additional obligation by this Rider that the Contractor shall promptly make payment when due of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of the execution of the aforesaid contract.

NOTWITHSTANDING any provision in the performance and/or payment bond, the expiration date for the sureties' responsibilities and/or liabilities under this Rider shall be sixty (60) months from the date the final payment for the project described herein is made, except in the existence of fraud there shall be no expiration date for this Rider.

NOTWITHSTANDING the tax information and return confidentiality provisions contained within Sections 27-65-1 et seq., 27-67-1 et seq., 27-7-1 et seq., 27-13-1 et seq., 27-7-301 et seq., and 27-55-301 et seq., Mississippi Code of 1972, and amendments thereto, principal hereby authorizes the State Tax Commission to release to surety any information relating to any claim against said surety made by the State Tax Commission which is covered by this bond.

SIGNED, SEALED AND DELIVERED, This the _____26th_____ day of _____July_____ 2001

Filed and approved this the ___13th___ day

of ___August_____ 2001.

**PRYOR & FRAZIER CONSTRUCTION, INC.**
<div align="center">Principal</div>

**THE AMERICAN INSURANCE COMPANY**
<div align="center">Surety</div>

By _____
<div align="center">Attorney-in-Fact</div>

<div align="right">W. E. French</div>

_____
Commissioner and Chairman of STATE TAX COMMISSION

COUNTERSIGNATURE

By _____
<div align="center">Resident Mississippi Agent</div>

W. E. French
<div align="center">(Type or Print Name of Agent)</div>
**The Bottrell Agency**

(SEAL)

**EXHIBIT**

"J"

Form 81-001 (Rev. 11/91)

STATE TAX COMMISSION                    **RIDER**                    Bond Number _____
JACKSON, MISSISSIPPI

(SALES, USE, INCOME, FRANCHISE, WITHHOLDING, AND
OTHER MOTOR FUEL (DIESEL FUEL) TAX BOND)

This rider is attached to and becomes a part of certain performance and/or payment bond executed by

**PRYOR & FRAZIER CONSTRUCTION, INC., Tupelo, MS** _____ as Principal,
(Name and Address)

in favor of    **TUPELO PUBLIC SCHOOL DISTRICT, Tupelo, MS** _____ as Obligee,
(Name and Address)

and covering a contract dated _____ **July 18** _____ **2000** ___, for the construction of

**Tupelo High School Additions and Renovations, 4125 Cliff Gookin Blvd., Tupelo, MS  38803** ____
(Name Project and Describe)

_____

_____

WHEREAS, under the provisions of Section 27-65-21, Mississippi Code of 1972, as amended, the said Principal is required to and has furnished the attached bond guaranteeing payment of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq.; and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of entering into said contract.

NOW, THEREFORE, in addition to the obligations set forth in the attached bond, there is hereby imposed the additional obligation by this Rider that the Contractor shall promptly make payment when due of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of the execution of the aforesaid contract.

NOTWITHSTANDING any provision in the performance and/or payment bond, the expiration date for the sureties' responsibilities and/or liabilities under this Rider shall be sixty (60) months from the date the final payment for the project described herein is made, except in the existence of fraud there shall be no expiration date for this Rider.

NOTWITHSTANDING the tax information and return confidentiality provisions contained within Sections 27-65-1 et seq., 27-67-1 et seq., 27-7-1 et seq., 27-13-1 et seq., 27-7-301 et seq., and 27-55-301 et seq., Mississippi Code of 1972, and amendments thereto, principal hereby authorizes the State Tax Commission to release to surety any information relating to any claim against said surety made by the State Tax Commission which is covered by this bond.

SIGNED, SEALED AND DELIVERED, This the ___**20th**___ day of ____**July**____ ___**2000**___

Filed and approved this the ___8th___ day

of ___August___ ___2000___.

_____
Commissioner and Chairman of STATE TAX COMMISSION

(SEAL)

**EXHIBIT**

"K"

**PRYOR & FRAZIER CONSTRUCTION, INC.**
Principal

**THE AMERICAN INSURANCE COMPANY**
Surety

By _____
Attorney-In-Fact
                                    W. E. French

COUNTERSIGNATURE

By _____
Resident Mississippi Agent

W. E. French                    **THE BOTTRELL AGENCY,**
(Type or Print Name of Agent)
**a Division of Trustmark Insurance Agency, Inc.**

JB 13-041-73

Form 61-001 (Rev. 11/91)

STATE TAX COMMISSION                **RIDER**          Bond Number _____
JACKSON, MISSISSIPPI

**(SALES, USE, INCOME, FRANCHISE, WITHHOLDING, AND
OTHER MOTOR FUEL (DIESEL FUEL) TAX BOND)**

This rider is attached to and becomes a part of certain performance and/or payment bond executed by

**PRYOR & FRAZIER CONSTRUCTION, INC., Tupelo, MS** _____  as Principal,
<div align="center">(Name and Address)</div>

in favor of   **New Albany School District, New Albany, MS** _____ as Obligee,
<div align="center">(Name and Address)</div>

and covering a contract dated _____ **July 24** _____ **2001** _____, for the construction of

**New Albany Elementary School, New Alany School District, New Albany, Mississippi.** _____
<div align="center">(Name Project and Describe)</div>

WHEREAS, under the provisions of Section 27-65-21, Mississippi Code of 1972, as amended, the said Principal is required to and has furnished the attached bond guaranteeing payment of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of entering into said contract.

NOW, THEREFORE, in addition to the obligations set forth in the attached bond, there is hereby imposed the additional obligation by this Rider that the Contractor shall promptly make payment when due of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of the execution of the aforesaid contract.

NOTWITHSTANDING any provision in the performance and/or payment bond, the expiration date for the sureties' responsibilities and/or liabilities under this Rider shall be sixty (60) months from the date the final payment for the project described herein is made, except in the existence of fraud there shall be no expiration date for this Rider.

NOTWITHSTANDING the tax information and return confidentiality provisions contained within Sections 27-65-1 et seq., 27-67-1 et seq., 27-7-1 et seq., 27-13-1 et seq., 27-7-301 et seq., and 27-55-301 et seq., Mississippi Code of 1972, and amendments thereto, principal hereby authorizes the State Tax Commission to release to surety any information relating to any claim against said surety made by the State Tax Commission which is covered by this bond.

SIGNED, SEALED AND DELIVERED, This the   **25th**   day of _____ **July** _____ **2001**

Filed and approved this the ____ day

of _____ ____ .

_____
Commissioner and Chairman of STATE TAX COMMISSION

(SEAL)

**PRYOR & FRAZIER CONSTRUCTION, INC.**
<div align="center">Principal</div>

**THE AMERICAN INSURANCE COMPANY**
<div align="center">Surety</div>

By _____
<div align="center">Attorney-in-Fact</div>
          **Jim A. Armstrong**

COUNTERSIGNATURE:

By _____
<div align="center">Resident Mississippi Agent</div>
**Jim A. Armstrong**
<div align="center">(Type or Print Name of Agent)</div>
**The Bottrell Agency**

**EXHIBIT**

"L"

Form 61-001 (Rev. 11/91)

Bond Number _____

**STATE TAX COMMISSION**                        **RIDER**
**JACKSON, MISSISSIPPI**

(SALES, USE, INCOME, FRANCHISE, WITHHOLDING, AND
OTHER MOTOR FUEL (DIESEL FUEL) TAX BOND)

This rider is attached to and becomes a part of certain performance and/or payment bond executed by

<u>PRYOR & FRAZIER CONSTRUCTION, INC., Tupelo, MS</u> _____ as Principal,
(Name and Address)

in favor of    <u>DESOTO COUNTY SCHOOL DISTRICT, Hernando, MS</u> _____ as Obligee,
(Name and Address)

and covering a contract dated _____ <u>April 16</u> _____ <u>2001</u> , for the construction of

<u>DeSoto County Schools, New Center Hill Elementary School, Olive Branch, MS</u> _____
(Name Project and Describe)

WHEREAS, under the provisions of Section 27-65-21, Mississippi Code of 1972, as amended, the said Principal is required to and has furnished the attached bond guaranteeing payment of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of entering into said contract.

NOW, THEREFORE, in addition to the obligations set forth in the attached bond, there is hereby imposed the additional obligation by this Rider that the Contractor shall promptly make payment when due of all taxes, damages, interest and penalties which may accrue to the State of Mississippi under Section 27-65-1 et seq., and Section 27-67-1 et seq., and Section 27-7-1 et seq., and Section 27-13-1 et seq., and Section 27-7-301 et seq., and Section 27-55-313, Mississippi Code of 1972, and amendments thereto, on account of the execution of the aforesaid contract.

NOTWITHSTANDING any provision in the performance and/or payment bond, the expiration date for the sureties' responsibilities and/or liabilities under this Rider shall be sixty (60) months from the date the final payment for the project described herein is made, except in the existence of fraud there shall be no expiration date for this Rider.

NOTWITHSTANDING the tax information and return confidentiality provisions contained within Sections 27-65-1 et seq., 27-67-1 et seq., 27-7-1 et seq., 27-13-1 et seq., 27-7-301 et seq., and 27-55-301 et seq., Mississippi Code of 1972, and amendments thereto, principal hereby authorizes the State Tax Commission to release to surety any information relating to any claim against said surety made by the State Tax Commission which is covered by this bond.

SIGNED, SEALED AND DELIVERED, This the ___9th___ day of _____ <u>April</u> ___2001___

Filed and approved this the ___3RD___ day

of __<u>May</u>__ ___2001___ .

_____
Commissioner and Chairman of STATE TAX COMMISSION

(SEAL)

**PRYOR & FRAZIER CONSTRUCTION, INC.**
Principal

**THE AMERICAN INSURANCE COMPANY**
Surety

By _____
Attorney-in-Fact        D. M. Ferris

COUNTERSIGNATURE:

By _____
Resident Mississippi Agent
D. M. Ferris
(Type or Print Name of Agent)
**The Bottrell Agency**

EXHIBIT
"M"

**Sales and Use Tax Bureau**
**Street Address:**
**1577 Springridge Road**
**Raymond, Mississippi 39154**

*www.mstc.state.ms.us*

**Mailing Address:**
**Post Office Box 1033**
**Jackson, Mississippi 39215**

**Telephone: 601-923-7015**
**FAX: 601-923-7034**



# MISSISSIPPI

## STATE TAX COMMISSION

March 15, 2007

**CERTIFIED MAIL**

V. HAYES
MAR 21 2007

The American Insurance Company
777 San Marin Drive
Novato, CA 94998

Re: Pryor & Frazier Construction Company, Inc.
Sales Tax Acct. 041-70195-4
Bond # 11141714565, 11141747219, 11119520416, MUW, MSU
Copies of bonds enclosed

To Whom It May Concern:

This is to inform you that all efforts of the Mississippi State Tax Commission to collect from the above named taxpayer tax, interest and penalty totaling **$64,645.00** due in connection with their sales tax account have failed and all legal remedies have been exhausted. The taxpayer has been given due process of law to enable him to exercise all rights provided by the Sales Tax Law. The amount is computed as follows:

|          | JB 131575-53 | JB 133271-44 | JB 120795-41 | JB 133041-73 | JB 129680-17 |
|----------|--------------|--------------|--------------|--------------|--------------|
| Tax      | $ 9,465.00   | $ 10,598.00  | $1,411.00    | $ 179.00     | $ 14,046.00  |
| Interest | $ 2,354.00   | $ 3,513.00   | $ 339.00     | $ 43.00      | $ 4,846.00   |
| Penalty  | $ 4,733.00   | $ 5,299.00   | $ 706.00     | $ 90.00      | $ 7,023.00   |
| Total    | $16,552.00   | $ 19,410.00  | $2,456.00    | $ 312.00     | $ 25,915.00  |

Since our records indicate The American Insurance Company to be surety for these taxes, we are now compelled to demand from you, as surety, payment of **$64,645.00** within ten days pursuant to the provisions of Section 27-65-57, Mississippi Code of 1972.

We must now demand payment of the above stated tax interest and penalty within ten (10) days or we will be forced to file any applicable tax warrants or liens against you, as surety for the aforementioned liability pursuant to the above mentioned Section.

Sincerely,

JOSEPH L. BLOUNT, CHAIRMAN
STATE TAX COMMISSION

By: Meg Bartlett, Director
Sales and Use Tax Bureau

CC: W. E. French
P O Box 1490
Jackson, MS 39215

Jim A. Armstrong

D. M Farris

## EXHIBIT
"N"